IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES RICE, JR. and <br> VERONICA RICE, his wife, <br><br> Plaintiffs, <br><br> v. <br><br> CHESAPEAKE ENERGY CORP. and <br> DALE PROPERTY SERVICES PENN, LP, <br><br> Defendants. | Case No. 2:12-cv-00392 <br><br> Judge Mark R. Hornak |

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

Pending before the Court is the Plaintiffs' Motion to Remand this civil action to the Court of Common Pleas of Greene County, Pennsylvania. (ECF No. 12) Also pending is a Motion to Dismiss filed by Defendants. (ECF Nos. 4, 17) For the reasons which follow, the Motion to Remand will be granted.

The Plaintiffs, James and Veronica Rice ("Rices") are property owners in Greene County, Pennsylvania. They entered into a lease with Defendant Dale Property Services Penn, LP ("Dale") for the development and recovery of natural gas on their property ("Lease"). (ECF No. 1-1). Thereafter, Dale purported to assign that Lease to Defendant Chesapeake Energy Corp. ("Chesapeake").[1] The Rices allege that each Defendant has breached one or more provisions of

---

[1] Named Defendant Chesapeake Energy Corp. has moved to dismiss the claims against it (ECF Nos. 4, 17), essentially on the grounds that the Rices have sued the wrong Chesapeake entity. (ECF No. 23 at 5). While as a factual matter that may turn out to be correct (as a factual matter) this Court cannot resolve such a factual issue at this stage of the proceedings, and, in light of the remand of this action to state court, the Motions to Dismiss are

the Lease. The Defendants timely removed this action to this Court on diversity of citizenship grounds. 28 U.S.C. §1332(a)(1). The parties stipulated in open court at a hearing on May 30, 2012 that Dale is, for diversity purposes, a citizen of Pennsylvania, which, in the ordinary course, would destroy diversity, deprive this Court of subject matter jurisdiction, make removal improper, and compel remand. *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). Defendants however contend that applying the doctrine of "fraudulent joinder," Dale is to be disregarded as a party from jurisdictional consideration in the diversity analysis. If that is so, there remains complete diversity of citizenship between the parties, and this Court may properly exercise subject matter jurisdiction over the case.

This question is not a novel one, and this Court has the benefit of a well-developed body of law that is applicable to this issue. *See Mylan Inc. v. Zorich*, No. 2:12-cv-80, 2012 WL 527662, *3-5 (W.D. Pa. Feb. 16, 2012) (collecting cases). "Fraudulent joinder" is a term of art in this context. While it may mean, literally, that a party has been joined as a defendant with no basis in law or in fact, and solely for the purpose of defeating federal jurisdiction, akin to an allegation of common law fraud, *Brown v. Jevic*, 575 F.3d 322, 326-28 (3d Cir. 2009), that is not the basis asserted for removal here. Instead, such joinder may also be found to have occurred when a party is joined as a defendant in good faith (or at least not in bad faith), but as a matter of law, based on the facts alleged, there is no basis for the assessment of liability against such joined defendant. *Mylan*, 2012 WL 527662, at *4-5. In either case, the outcome is the same -- that the defendant is disregarded in assessing the citizenship of the defendants in conducting the jurisdictional analysis.

---

more properly addressed in that forum. Defendant Dale moved to dismiss on the basis that the Rices' claims are without merit because of Dale's assignment of the Lease to Chesapeake. Those contentions are addressed at length in this Memorandum Opinion.

Our Court of Appeals has directed district courts confronted with the application of this doctrine to apply two core legal principles. First, removal statutes are to be strictly construed, and all doubts as to the court's jurisdiction are to be resolved against removal, fraudulent joinder being an issue or not. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012, n.6 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988). The removing party carries a heavy burden of persuasion in this regard. *Id.* Second, the district court is to resolve any and all doubts as to the validity of the claims pled in favor of the plaintiff, with the defendant bearing the burden of supporting removal. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005). In other words, unless a federal trial court can say without hesitation or doubt that the claims against the "fraudulently joined" defendant could not survive dismissal if they were asserted in state court, resolving all close or doubtful factual or legal questions in favor of the plaintiff, then the federal district court is to find in favor of the viability of such claims for purposes of this stage of analysis, and remand the case to the state court. *Boyer*, 913 F.2d at 111.

As the Third Circuit has directed, if there is even "a possibility" that a state court would find that a cause of action against the resident defendant has been pled, then the federal district court must find joinder to be proper for these purposes, and remand the case to state court. *Brown*, 575 F.3d at 327; *In re Briscoe*, 448 F.3d at 217; *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992). Thus, the Court must consider the applicable substantive state law and assess whether the Complaint states a claim for relief, giving every benefit of the doubt (as to fact and law) to the plaintiffs. *Mylan*, 2012 WL 527662, at *4-6.

Here, the Court is required to examine the unique nature of oil and gas leases under Pennsylvania law. There is no doubt that the Complaint plausibly asserts, with a sufficient

3

factual basis, claims of breach of the Lease against each Defendant. There is also no doubt that Dale entered into the Lease in question with the Rices (ECF No. 22), and the Defendants have proffered a document showing that it was then assigned to Chesapeake (ECF No. 5-1). *See Mylan*, 2012 WL 527622, at *4 (court may go beyond the pleadings in conducting the requisite analysis). While the Rices challenge the legal effect of such assignment, they do not appear to contest that it happened. Dale argues that due to the special nature of oil and gas leases under Pennsylvania law, the impact of that assignment is to completely extinguish all of the Rices' Lease-based claims against them. If that is so, then for removal purposes, Dale would be considered "fraudulently joined," the motion to remand is to be denied, and the action would proceed in this court.

As a general matter, a lessee's assignment of its leasehold rights does not extinguish its liability or obligations to the lessor, absent the lessor's consent to the assignment and accompanying release of the lessee from those obligations. *Gale Industries, Inc. v. Bristol Farmers Market & Auction Co.*, 431 Pa. 464, 471-72, 246 A.2d 391, 394-95 (1968); *Bird Hill Farms, Inc. v. U.S. Cargo & Courier Service, Inc.*, 845 A.2d 900, 907 (Pa. Super 2004). This is because in the normal course, a lease for the right to possess and use real property is governed by principles of both land use law and contract law. *Ghegan v. Young*, 23 Pa. 18, 20, 1854 WL 6275 (1854). While an assignment may terminate the lessee's right to use and occupy the real property as between it and its assignee, the lessee is not excused from its obligations under the lease as to the lessor, unless the lessor has, by express action or unequivocal conduct, released the lessee from those obligations. *Bird Hill Farms*, 845 A.2d at 907. In Pennsylvania, unless the terms of the lease or the context of the arrangement provide otherwise, leases are presumed to be freely assignable by a lessee. *Pennsylvania Co. For Ins. On Lives & Granting Annuities to Use*

*of Belmont, v. Lebanon Bldg. & Loan Ass'n*, 337 Pa. 316, 319 n.2, 10 A.2d 418, 419 n.2 (1940), *accord, Fed. Deposit Ins. Corp. v. Barness*, 484 F. Supp. 1134, 1151 (E.D. Pa. 1980). This presumption is supported by the principle that the fact of an assignment, standing alone, does not ordinarily work a novation of the "contractual" component of the lease relationship, and keeps the original lessee in the game, vis-a-vis the lessor. *Gale Industries*, 246 A.2d at 471-72.

Dale contends that, while these legal principles are generally applicable to conventional leases, they do not represent the law as to oil and gas leases in Pennsylvania. Dale argues that when the special principles applicable to oil and gas leases in Pennsylvania are considered, once Dale assigned the Lease to Chesapeake, the Rices were obligated to look solely to Chesapeake for any claimed breach of Lease obligations, and the duties and obligations of Dale to the Rices came to an end.

In Pennsylvania, an oil and gas lease is not presumed to carry with it principles of lease construction found in the landlord/tenant arena. *Kepple v. Fairman Drilling Co.*, 380 Pa. Super. 52, 54-62, 551 A.2d 226, 230-31 (1988); *see also, Hite v. Falcon Partners*, 13 A.3d 942, 945 (Pa. Super. 2011) (applying principles of both contract and property law). It is viewed as an interest in real property more akin to a fee simple determinable interest. *Snyder Bros. Inc. v. Peoples Natural Gas Co.*, 450 Pa. Super. 371, 378, 676 A.2d 1226, 1230 (1996). A recent decision of the Pennsylvania Supreme Court states that, at the time of entry into the lease, such property interest is inchoate, and it ripens into fruition once any production of oil or gas commences. *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). When production begins, it is a fee simple determinable interest, with the defeasing event as being defined by the lease (for instance, the failure to begin or continue production). Thus, the assignment of that interest by the lessee could be viewed solely as the transfer of a fee interest,

either one that is inchoate or fully "ripened," depending on the timing of the assignment, but in either case, a property transfer event that fundamentally affects the lessee's duties to the lessor. *See Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Val. Coal Co.*, 353 Pa. 185, 191-92, 44 A.2d 571, 574 (1945); *see also, Texas Keystone Inc. v. Pennsylvania Dept. of Conservation & Natural Resources*, 851 A.2d 228, 237 (Pa. Commw. 2004). According to Dale, the lessor is obliged to look only to the assignee (rather than the lessee) for leasehold performance. Of course, if a lessor desires to restrict the right of assignment at the time of the execution of the original lease, a lessor can mandate that no assignment occur without its express consent. That did not happen here. Thus, Dale contends that as a foundational matter, absent such a limiting proviso, the obligations of Dale under the Lease ended and those obligations became solely the assignee's, which, in this case, would mean that the Rices' claims here now could lie only against Chesapeake.

Relying on *Washington Natural Gas Co. v. Johnson, et al.*, 123 Pa. 576, 591, 16 A. 799, 801 (1889), the Rices contend that under Pennsylvania law, when it comes to the effect of an assignment, oil and gas leases are treated the same as any other lease. According to the Rices, oil and gas leases carry both land use and contractual attributes when considering the effect of an assignment, and that absent consent and release by the lessor, a lessee retains liability even after an assignment. *Id.* at 591, 16 A. at 801. As stated by the *Washington Natural Gas* court, "[t]hat [lessee] continued liable notwithstanding their assignment to [assignee] is very clear. The covenant was their own, and their privity of contract with their lessors continued notwithstanding their assignment of the lease." *Id.* at 591, 16 A. at 801. To be sure, the Pennsylvania Supreme Court in *Washington Natural Gas* further stated that the lessee liability would continue because

"although their assignment had divested them of the lease, it could not relieve them from their contract." *Id.* at 591, 16 A. at 801.

The Rices further contend that a number of Lease-based covenants have been breached, and that those covenants may be enforced against Dale. If true, this action must be remanded to state court. Here, all of the covenants that the Rices have relied upon in their Complaint run with the land.[2] These covenants are contained in the Lease or in annexed exhibits to the Lease. They each relate directly to the use and maintenance of the land.[3] They each affect, or burden, the use of the Leasehold. Under settled Pennsylvania law, they each run with the land. *Logston*, 394 Pa. Super. At 399-400, 576 A.2d at 61-62; *see Leh. v. Burke*, 231 Pa. Super 98, 106-07, 331 A.2d 755, 760 (Pa. Super. 1974).[4]

The issue thus framed is whether this Court can state that Pennsylvania substantive law, as to the effect of an assignment of an oil and gas lease, is now so clear that there is "not even a possibility" that a state court could find that the Rices' claims against Dale exist notwithstanding Dale's assignment of the Lease to Chesapeake. That is a conclusion that this Court cannot reach,

---

[2] Covenants may either run with the land, or may be purely personal. *Treasure Lake Prop. Owners Ass'n. Inc. v. Meyer*, 832 A.2d 477, 482 (Pa. Super. 2003); *see Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.*, 836 F.Supp. 2d 238, 246 (E.D. Pa. 2011). If one or more of the covenants at issue are "personal," then the Rices would have stated a claim against Dale that remains viable, and removal is defeated. *Logston v. Penndale, Inc.*, 394 Pa. Super. 393, 379-400, 576 A.2d 59, 61-62 (1990).

[3] The Rices' Complaint relies on Lease terms and covenants that relate to and/or govern road width (Count II) and surface damage (Count V). Other claims asserted relate to Chesapeake's entry on and use of the land *vel non*, damage to the land and crops on it, and unauthorized use of the land, matters plainly affecting the property. (ECF No. 1-1). In the context of the transfer of a fee interest by deed, Pennsylvania law would provide that as to covenants running with the land, liability falls only with the party in title and possession at the time the covenant is breached. *Leh v. Burke*, 231 Pa. Super. At 108, 331. A.2d at 761. Here, the "contract" overlay to the Lease as recognized in *Washington Natural Gas* and even in *Jedlicka* adds an element not present in *Leh* and its analysis is therefore not controlling on the matter before the Court.

[4] When Dale assigned the Lease to Chesapeake, they nonetheless reserved the right to receive certain royalties from production. The fact of that reservation does not, however, affect whether the Rices have rights remaining against Dale. Such a reservation of royalties has been held to be the reservation of a "personal" interest, not an interest in the leasehold, and therefore does not result in the reservation of a property interest as such by and in Dale. *Snyder Bros.*, 676 A.2d at 1230.

7

even though *Jedlicka* and *Hite* demonstrate a distinct evolution of Pennsylvania oil and gas law which may likely have as its end point the abrogation of the doctrine of lessee/assignor liability as stated in *Washington Natural Gas*. No case in the intervening 123 years has overruled, or expressly questioned the vitality of, *Washington Natural Gas*, and the Pennsylvania Supreme Court did not address it in *Jedlicka*. The *Jedlicka* court's citations to, and reliance upon, cases of century-old vintage, such as *Calhoon v. Neeley*, 201 Pa. 97, 101, 50 A. 967, 968 (1902), demonstrates that the advanced age of that court's doctrinal rules does not, in and of itself, make them inapplicable. Further, the *Jedlicka* court did expressly recognize a contractual aspect to a lease, even in the oil and gas context, 42 A.3d at 267, and affirmed the obvious -- "the traditional oil and gas 'lease' is far from the simplest of property concepts . . . ." *Id.* at 267, *quoting Brown v. Haight*, 435 Pa. 12, 15, 255 A.2d 508, 510 (1969).

While *Jedlicka* may be a harbinger that the Pennsylvania Supreme Court will soon declare that the "fee simple determinable" attributes of an oil and gas lease trump any and all vestiges of "lease as a contract" principles, and thus abrogate *Washington Natural Gas*, such a declaration has not yet occurred. Nor can this Court, in exercising its *Erie* analysis, predict with certain confidence that it will.[5] *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010), *applying Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). That the *Jedlicka* court expressly recognized certain contractual attributes of an oil and gas lease supports this conclusion.

Finally, our Court of Appeals has cautioned the district courts to resist the urge to conflate a decision on subject-matter jurisdiction in the "fraudulent joinder" context with a decision on the merits at a motion to dismiss or summary judgment stage. *In re Briscoe*, 448

---

[5] For these reasons, the Court cannot say that the removal of this action was without a good faith basis in law and in fact, and the Rices' request for the award of attorneys' fees and costs is denied.

8

F.3d at 219. It is entirely possible that, in state court, Dale's theories to defeat the claims asserted against it will ultimately prevail. Similarly, this Court cannot hold that the Rices' claims against Dale cannot prevail. The Court reaches no conclusion on the merits of these questions. Given that, the Court is duty bound under the direction provided by our Court of Appeals to hold that Dale has not been, for removal purposes, fraudulently joined as a defendant, and to remand this action to the Court of Common Pleas of Greene County, Pennsylvania.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: August 1, 2012

cc: All Counsel of Record